NO. 07-00-0575-CR


NO. 07-00-0576-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



APRIL 16, 2002



______________________________




OLLIE GRAY CHAMPION, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 179TH DISTRICT COURT OF HARRIS COUNTY;



NOS. 841383 and 841382; HONORABLE MICHAEL WILKINSON, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

ON ABATEMENT AND REMAND


 Appellant Ollie Gray Champion challenges his conviction of two separate charges
of aggravated sexual assault after pleas of guilty and his resulting sentences of 35 years
confinement in the Institutional Division of the Department of Criminal Justice and a
$10,000 fine. In one issue, he asserts that he was deprived of the assistance of counsel
during the time period for filing and presenting a motion for new trial in violation of federal
and state constitutions. 

 Appellant was represented at trial by retained counsel and pled guilty to the charges
without an agreed recommendation as to punishment. After sentence was imposed on
October 10, 2000, appellant filed a pro se notice of appeal on November 2, 2000, and
requested appointment of an attorney to represent him on appeal. On the same day, he
also filed a pro se motion for new trial in which one of his assertions was that he was
denied effective assistance of counsel because he was not adequately explained his
waiver of rights and therefore his plea was not knowingly and intelligently made. The
motion for new trial was supported by his own affidavit in which he further stated that he
agreed to plead guilty in reliance on his attorney's promise he would get probation. The
record does not show that the motion was ever presented to the trial court or ruled upon. 
Counsel was not appointed for appellant until February 6, 2001, after the appeal was
abated by this court, because the record showed that appellant had previously been
represented by retained counsel, was currently asserting his indigent status, and was
requesting appointment of an attorney on appeal. 

 Appellant argues that, although his motion for new trial was timely filed, he was
entitled to counsel during the time to file and present his motion for new trial. Because
counsel was not appointed for him until after the 75-day period for the court to rule on the
motion had passed, the motion was not presented to the trial court and no hearing was
held. In response, the State argues that appellant has failed to rebut the presumption that
his trial counsel was still representing him during the time for filing and presenting the
motion for new trial because the record does not reflect that his trial counsel ever withdrew
or abandoned his representation of appellant.

 An indigent defendant is entitled to counsel by the sixth amendment to the federal
constitution at every "critical" stage of a criminal prosecution where adversarial
proceedings have begun absent a valid waiver. Upton v. State, 853 S.W.2d 548, 553
(Tex.Crim.App. 1993). In Trevino v. State, 565 S.W.2d 938 (Tex.Crim.App. 1978), it was
held that a hearing on a motion for new trial is such a critical stage of a criminal
proceeding during which a defendant is entitled to counsel. Id. at 940. However, the Court
of Criminal Appeals has not yet addressed whether a defendant is entitled to counsel
during the time limit for filing a motion for new trial to assist with the preparation and
presentation of that motion. Smith v. State, 17 S.W.3d 660, 663 n.3 (Tex.Crim.App. 2000);
Oldham v. State, 977 S.W.2d 354, 360 (Tex.Crim.App. 1998), cert. denied, 525 U.S. 1181,
119 S.Ct. 1121, 143 L.Ed.2d 116 (1999). Nevertheless, several courts of appeal have
addressed the issue and found such a right to exist. See Prudhomme v. State, 28 S.W.3d
114, 119 (Tex.App.-- Texarkana 2000, no pet.); Hanson v. State, 11 S.W.3d 285, 288-89
(Tex.App.--Houston [14th Dist.] 1999, pet. ref'd); Massingill v. State, 8 S.W.3d 733, 736
(Tex.App.--Austin 1999, no pet.); Boyette v. State, 908 S.W.2d 56, 59 (Tex.App.--Houston
[1st Dist.] 1995), remanded on other grounds, 982 S.W.2d 428 (Tex.Crim.App. 1998). 

 The Court of Criminal Appeals has not found it necessary to address the issue
because in the cases before it, the defendant failed to show that he was not represented
by counsel. In Oldham, the defendant was represented by retained counsel at her trial. 
She was sentenced on January 13, 1992. She then filed a pro se notice of appeal and
indigency. On March 16, 1992, the court found her indigent, and counsel was appointed
to represent her. She then sought to have the appeal abated so that the trial court could
grant her leave to file a motion for new trial because she was denied her right to counsel
during a critical stage of her criminal proceedings. The court found she had failed to show
she was denied counsel. Oldham, 977 S.W.2d at 361. In so holding, the court noted that
the defendant did not file a motion for new trial, never indicated any grounds she would
have raised in the motion, never claimed she would be entitled to a hearing on her motion,
did not claim she was unable to raise certain issues because she did not first file a motion
for new trial, did not claim her trial counsel was ineffective for failing to file a motion for
new trial, and did not assert that she was not informed by her trial counsel of the
opportunity and grounds to file a motion for new trial. Id. There was also nothing in the
record to show trial counsel concluded his duties were completed at the end of trial. Id.
at 362. Therefore, the court held that when a motion for new trial is not filed, there exists
a rebuttable presumption that its filing was considered and rejected. Moreover, the fact
a pro se notice of appeal was filed only served to show that she was informed of at least
some of her rights, and the court would therefore presume she was adequately counseled. 
Id. at 363. 

 In Smith, the defendant pled guilty to a lesser offense without an agreed
recommendation as to punishment. The adjudication of his guilt was deferred and he was
placed on community supervision. Later, the court found he had violated his community
supervision and proceeded to adjudicate and assess punishment. The defendant then
filed a pro se notice of appeal alleging he received ineffective assistance of counsel at the
punishment hearing. He was brought to court where he signed a pauper's oath and
requested new counsel, which was appointed, but not until after the time for filing a motion
for new trial had expired. On appeal, the defendant argued that he was denied effective
assistance of counsel during the time for filing a motion for new trial, which deprived him
of the opportunity to develop an appellate record to show he received ineffective
assistance of counsel with respect to punishment. 

 The court found the only distinguishing facts between Smith and Oldham were that
the defendant was claiming his trial counsel was ineffective and he appeared without
counsel at the time he signed his pauper's oath. It held these facts were not sufficient to
justify a holding different than the one in Oldham. Smith, 17 S.W.3d at 663. There was
nothing in the record to show that the defendant was not counseled regarding a motion for
new trial, and therefore he failed to rebut the presumption that he was adequately
represented. Id.

 Contrary to these two cases, in the case at bar, appellant did file a pro se motion
for new trial, in which he alleged as one basis that his trial counsel was ineffective, which
rendered his plea involuntary. As already discussed, it has been held that the fact trial
counsel was retained and then, for purposes of appeal, the defendant asserts his
indigency, does not demonstrate that he is not still represented by his trial counsel. There
is nothing in this record to show that trial counsel had withdrawn from representation. 
Further, the fact that appellant filed a pro se notice of appeal has been held to be some
evidence that he was counseled as to his rights and presumably the same logic could
extend to the fact appellant filed a pro se motion for new trial. Nevertheless, we are
concerned with the possible conflict of interest of retained counsel, who is presumably no
longer being paid as his client now claims to be indigent, being able to counsel his client
as to the manner and means of asserting counsel's own ineffectiveness at trial. Further,
if the hearing on a motion for new trial is a critical stage of a criminal proceeding, we are
hard-pressed to make the distinction between the hearing itself and the preparation and
presentation of the motion that would entitle one to that hearing. 

 A motion for new trial is a prerequisite to presenting a point of error on appeal when
necessary to adduce facts not in the record. Tex. R. App. P. 21.1. A motion for new trial
is to be filed within 30 days after the date the trial court imposes or suspends sentence
in open court. Tex. R. App. P. 21.4(a). The motion must then be presented to the trial
court within ten days of its filing, unless the trial court permits it to be presented and heard
within 75 days from the date when the court imposes or suspends sentence in open court. 
Tex. R. App. P. 21.6. The court must rule on the motion within that 75-day period, and a
motion not timely ruled on by written order is deemed denied after the 75-day period
expires. Tex. R. App. P. 21.8(a) and (c). When a motion for new trial raises matters not
determinable from the record which could entitle the movant to relief, the trial judge abuses
his discretion in failing to hold a hearing if the allegations are supported by affidavit
showing the truth of the matters asserted. King v. State, 29 S.W.3d 556, 569
(Tex.Crim.App. 2000). 

 The facts before us are virtually identical to those in Prudhomme, in which the
defendant pled guilty to aggravated sexual assault without a recommended sentence for
punishment and received a life sentence. On appeal, he contended he was denied the
right to counsel during the time period for filing and presenting a motion for new trial. The
record showed that Prudhomme was represented by counsel through trial and no motion
to withdraw was filed by counsel. However, 25 days after sentence was imposed,
Prudhomme sent to the trial court a pro se notice of appeal, a pro se motion to substitute
counsel of record, and a pro se "Motion to Withdraw Plea," in which he asserted his plea
was involuntary due to ineffective assistance of counsel, which the court considered to be
a motion for new trial. His assertion was that his plea was involuntary because he had
been told by counsel he would receive probation. Fifty-eight days after sentence was
imposed, he signed a pauper's oath and was appointed counsel for appeal. The pro se
motion for new trial was never presented to the trial court and a hearing was never
requested. 

 The Texarkana court found the presumption that trial counsel continued to
effectively represent Prudhomme during the time for filing a motion for new trial was
rebutted by the filing of a pro se motion for new trial complaining of ineffective assistance
of counsel, but which neither requested a hearing nor was presented to the court, together
with the filing of a pro se notice of appeal and a pro se motion to substitute counsel. (1)
Prudhomme, 28 S.W.3d at 120. The court also found that Prudhomme was harmed
because he asserted a facially plausible claim based on matters outside the record upon
which the trial court would have been required to hold a hearing if the motion had been
presented and a hearing requested. Id. at 120-21. 

 In the case at bar, appellant filed a pro se notice of appeal, which did not merely
request substitution of counsel, but appointment of counsel. He also filed a pro se motion
for new trial, which was sufficient to rebut the presumption he had chosen not to present
such a motion. Although appellant had retained counsel at trial, he asserted his indigent
status for purposes of appeal. This court abated the appeal for appointment of counsel
because the record did not reflect that the trial court had ever acted on appellant's request. 
Moreover, the motion for new trial was based at least in part on a claim of ineffective
assistance of counsel, which could create a conflict of interest for his trial attorney in the
preparation and argument of the same. The motion was never presented to the trial court
and a hearing was not requested. We believe the facts unique to this case rebut the
presumption that appellant continued to be represented by counsel and was adequately
counseled. Further, we believe if appellant is entitled to counsel for purposes of a hearing
on a motion for new trial, he is entitled to counsel during the time for preparing and
presenting that motion for new trial, and his failure to be represented is a violation of his
right to counsel under the sixth amendment. Additionally, that error was not harmless
because he would have been entitled to a hearing if the motion had been presented to the
trial court, and his failure to receive that hearing prevented him from making a record for
appellate review. 

 Therefore, the appeal is abated and remanded to the trial court to the point at which
appellant was convicted and sentence imposed. If the motion for new trial is granted, the
record shall be supplemented with a copy of the trial court's order. If the motion for new
trial is overruled, the record shall be supplemented with the court's order and the reporter's
record of any hearing held. At that time, the parties may request an opportunity to brief
any issues regarding the court's denial of the motion. 

 Per Curiam

Publish.

 

 

 

 

 

 
1. This was apparently a limited holding because, in a more recent decision,
Yarbrough v. State, 57 S.W.3d 611 (Tex.App.--Texarkana 2001, pet. ref'd), the same court
distinguished the facts in that case from Prudhomme by noting that counsel had filed the
motion for new trial and there was no claim of ineffective assistance of counsel in the
motion which might create a conflict of interest. 



alse" Priority="67" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Grid 1 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-08-00442-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



OCTOBER
25, 2010

 



 

JIMMY L. ALEMAN, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 140TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2007-417,499; HONORABLE JIM BOB DARNELL, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant Jimmy L. Aleman appeals
from his jury conviction for the offense of intentional or knowing injury to a
child[1]
and the resulting sentence of 99 years of imprisonment in the Institutional
Division of the Texas Department of Criminal Justice.  Through three issues, appellant contends the
evidence was legally and factually insufficient to support his conviction and the
trial court erred by denying appellant=s requested charge on voluntariness.  We will affirm.

Background

The injured child was appellants
twenty-eight-month-old son.  The childs
head injury occurred during an afternoon in August 2007 at the home in Lubbock
where appellant lived with his wife, their son and their three-year-old
daughter.  Appellants wife was at work
at the time, and appellant was home with the children.

Testimony showed that appellant
called his wife at work, telling her their son was jumping on the couch, fell
off and hit his head on a table.  She
told appellant to call 911, and she hurried home.  The recording of appellants 911 call was admitted into evidence.  The jury heard appellant tell the 911
operator that his son jumped off the sofa.

A paramedic who was among those
responding to the 911 call testified that appellant told her the child had
fallen off the couch and hit his head on the floor.  The child was unconscious, and although the
paramedic did not feel swelling or soft places on the child=s head, he exhibited symptoms of head
injury.  The paramedic observed decerebrate posturing, in which the childs head went
straight back.  His arms went stiffened
out, and his legs stiffened out.  That=s indicative of a head injury.@[2]  From the apparent severity of his injury, the
paramedic doubted it resulted only from a fall from the low couch onto the
carpeted floor.

After paramedics stabilized the child
they transported him to Covenant Childrens Hospital.  The emergency room physician also found the
child nonresponsive.  A CT scan revealed
a large subdural hematoma on the right side of the childs head.  Surgery followed to remove the hematoma and
lessen pressure inside the childs skull. 
Photos taken in the hospital show a large C-shaped surgical wound on the
right side of the childs head.  He spent
two months in the hospital, and at the time of trial remained in what his
mother described as a semi-coma.  He
was not then ambulatory, did not speak, did not react
to his surroundings and was fed by tube.

In the days after the injury, in
response to questions about its cause, appellant began to modify his version of
the events.  The next day after the
injury, appellant told his wife that, while playing, he had thrown his son Aat the sofa@ from the entryway of the living
room.  The same
day, after Miranda warnings,
appellant signed a written statement to police stating he liked to play with
his son, and all of our family says I play too rough with him.  Appellant told how on that day he played with
his son by spinning around while holding the boy by his wrists until they were dizzy, and later by throwing him up in the air and catching
him.  On the last throw, appellant threw
the boy up "as hard as I could and I threw him over my head and out of my
reach."  Appellant said he failed to
catch the child and his head hit the floor.

The second day after the
injury, appellant gave a second written statement to police, in which he said
his description of his playful activities in his previous statement was
accurate, but that the child really was not hurt when appellant failed to catch
him after throwing him up in the air. 
The statement said the child actually was hurt when appellant
"threw him across the room in a superman type throw."  In this second written statement, appellant said he threw his
son Ain an underhand throw like a fast
pitch softball with both hands[,]@ intending Ato throw him onto the couch but he
missed and he landed on his head, the back . . . .@ 


Both of appellants
police interviews also were audio-recorded, and the jury heard both recordings. 
During the second interview, appellant reiterated he threw the child,
intending him to reach the couch, and insisted he intended no harm to him.  Appellant cried during the interview,
asserting he would never intentionally hurt his son.

Appellant did not testify at
trial.  He presented testimony from his
former in-laws.[3]
Both testified they never observed abusive behavior
by appellant toward his children, and did not think appellant intentionally
hurt his son.

In argument, appellant
conceded before the jury that his conduct with his son was either reckless or
criminally negligent, but steadfastly denied any intentional or knowing conduct
with respect to the injury.  

The courts charge gave the jury the
choices of finding appellant not guilty, or finding him guilty of causing his
sons injuries intentionally or knowingly; guilty of causing the injuries
recklessly; or guilty of causing the injuries by criminal negligence.  The jury found him guilty of the most serious
of the offenses, finding he caused the injuries intentionally or knowingly.

Analysis

Issues One and Two - Sufficiency of
the Evidence

In appellant=s first issue, he challenges the
legal sufficiency of the evidence to support his conviction.  He does not contest the sufficiency of the
evidence he caused his sons injury nor the sufficiency of the evidence it
constituted serious bodily injury.[4]
Appellants contention focuses instead on the evidence he acted with the mental state required to support a conviction under §
22.04(a) of the Penal Code. 
Like at trial, he argues the evidence shows at most that he acted
recklessly.  We disagree, and will
overrule the issue.

In reviewing issues of evidentiary
sufficiency, an appellate court views the evidence in the light most favorable
to the verdict to determine whether, based on that evidence and reasonable
inferences therefrom, a rational jury could have
found each element of the offense beyond a reasonable doubt.  Brooks v. State, No. PD-0210-09, 2010 Tex.
Crim. App. LEXIS 1240 (Tex.Crim.App. Oct. 6,
2010); Swearingen v. State, 101 S.W.3d 89, 95 (Tex.Crim.App.
2003); Conner v. State, 67 S.W.3d 192, 197 (Tex.Crim.App.
2001) (citing Jackson v. Virginia,
443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979)).  The standard gives full play
to the responsibility of the trier of fact fairly to
resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson,
443 U.S. at 319.  If, given all of the
evidence, a rational jury would necessarily entertain a reasonable doubt of the
defendant=s guilt, due process requires that we
reverse and order a judgment of acquittal. 
Swearingen, 101 S.W.3d at 95 (citing Narvaiz v. State, 840
S.W.2d 415, 423 (Tex.Crim.App. 1992)), cert.
denied, 507 U.S. 975,113 S.Ct. 1422, 122 L.Ed.2d
791 (1993).  Circumstantial evidence is
as probative as direct evidence in establishing guilt, and circumstantial
evidence alone can be sufficient to do so. 
Hooper v. State, 214 S.W.3d 9 (Tex.Crim.App.
2007) (citing Guevara v. State,
152 S.W.3d 45, 49 (Tex.Crim.App. 2004)).  A conclusion of guilt can rest on the
combined and cumulative force of all incriminating circumstances.  Conner,
67 S.W.3d at 197.

Injury to a child is a result of
conduct offense; the culpable mental state relates not to the nature of or the
circumstances surrounding the defendants charged conduct, but to the result of
the conduct.  Patterson v. State, 46 S.W.3d 294, 301 (Tex.App.--Fort
Worth 2001, pet. refused) (citing Haggins
v. State, 785 S.W.2d 827, 828 (Tex.Crim.App.1990)); see Williams v. State, 235 S.W.3d 742, 750 (Tex.Crim.App.
2007) (noting injury to child is result-oriented offense requiring a mental
state that relates not to the specific conduct but to the result of that
conduct).  We may affirm the jurys
general verdict of guilt if we find the evidence
sufficient to sustain a finding beyond a reasonable doubt that appellant acted
either intentionally or knowingly with regard to his sons injuries.  See
Patterson, 46 S.W.3d at 300 (where jury authorized to convict on more than
one theory, general verdict of guilt may be sustained if evidence supports
conviction under at least one theory). 

Under the Penal Code, a person acts
intentionally, or with intent, with respect to a result of his conduct when it
is his conscious objective or desire to cause the result.  Tex. Penal Code Ann. '
6.03(a) (Vernon 2003).  A person
acts knowingly, or with knowledge, with respect to a result of his conduct when
he is aware that his conduct is reasonably certain to cause the result.  Tex. Penal Code Ann. '
6.03(b) (Vernon 2003).  Thus,
proof that a defendant knowingly caused injury to a child requires evidence
that he was aware with reasonable certainty that the injury would result from
his conduct.  Patterson, 46 S.W.3d at 302.

A person acts recklessly, or is
reckless, with respect to the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the result
will occur. The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor's standpoint.  Tex. Penal Code Ann. '
6.03(c) (Vernon 2003). 

A defendants culpable state of mind
is almost invariably proven by circumstantial evidence.  Morales
v. State, 828 S.W.2d 261, 263 (Tex.App.--Amarillo
1992), affd,
853 S.W.2d 583 (Tex.Crim.App. 1993); accord, Montgomery v. State, 198 S.W.3d 67, 87 (Tex.App.--Fort
Worth 2006 pet. refused).  Intent can be
inferred from the acts, words and conduct of the accused, and from the extent
of the victims injuries and the relative size and strength of the parties.  Patrick v. State, 906 S.W.2d 481, 487 (Tex.Crim.App.
1995).  

The State argues the jury could infer
appellants guilty conscience caused him to lie to his wife, emergency
responders and police about how his sons injury was incurred.  The paramedic and others quickly recognized
it was unlikely to have been incurred in a fall from the couch, and appellants
second statement to police acknowledges he lied in his first interview because
he thought it sounded better and that it would make more sense that I didnt
catch him versus what really happened. 
The State is correct that a jury may infer from a persons lying that
he had something to hide. Couchman v. State, 3 S.W.3d 155, 164 (Tex.App.--Fort Worth 1999, pet. refused).  While we do not find the inference especially
strong as evidence here that appellant caused the injuries intentionally or
knowingly, rather than recklessly or negligently, we agree the jury rationally
could have assigned some strength to it.  


We find further support
for the jurys verdict in the medical testimony.  Although the precise nature of the childs
brain injury is not well described in the record, the medical testimony is to
the effect that the subdural hematoma was the result of blunt force
trauma.  The formerly
active child was unconscious when paramedics arrived at the home, and remained
in a semi-conscious condition at the time of trial, no longer responsive to his
surroundings.  Although the emergency
room physician acknowledged the possibility the childs injury was incurred by
contact with the floor as described by appellant in his statements, if
he were Atossed hard enough,@ the physician also testified he had not seen a subdural hematoma resulting from
a play accident.  He elsewhere noted
that the injury would have taken considerable force and that it carried a
significant risk for death.[5]


The jury was free to believe that the childs head injury occurred
in the manner appellant last described to police, that is, that appellant
tossed the child underhanded toward the sofa but the child landed on his head
short of the sofa.  The emergency room
physician gave opinion testimony concerning the likelihood of the childs head
injury occurring in that manner.  The
physician testified:

Q.        Person
standing right in front of that picture playfully tosses a child towards the
direction of the sofa, thinking hes going to make the sofa, if . . . the child
doesnt make it, and lands on the floor, thats going to cause a subdural
hematoma?  

A.        That
I would . . . not find credible.

Q.        Why
not?

A.        If what you
described was that was a toss would have been an arc, and if you throw the
child straight up in the air and have him come down on his head, that might
have imparted that much injury.  But a
gentle curve that would have put him sliding across
the floor, less likely.

Q.        Assuming
the child landed on his head?

A.        Hed
have to land straight on the head and have a good arc.

Q.        In other
words, almost be in front of that sofa with his legs up; is that correct?  

A.        That
would be . . . possible.

 

There was evidence that
the sofa was some eight feet from the spot from which appellant said he tossed
his son, and that the child weighed about twenty-six pounds.  From the testimony, the jury thus could have
concluded that appellant tossed his son in a good arc over that distance such
that he landed straight on the head. 
We believe a jury reasonably could infer that such an action by
appellant was accompanied by an awareness that it was reasonably certain to
cause serious head injury.[6]  The evidence supports a rational conclusion
appellant acted knowingly.[7]

Appellants second issue asserts the
evidence supporting the jurys finding he
intentionally or knowingly caused his sons injury is factually
insufficient.  In Brooks v. State, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240 (Tex.Crim.App.
Oct. 6, 2010), the Court of Criminal Appeals abandoned factual sufficiency
analysis under Clewis v. State, 922 S.W.2d 126 (Tex.Crim.App. 1996), and held that the only standard to be
applied when determining the sufficiency of evidence to support an element of a
criminal offense that the State is required to prove beyond a reasonable doubt
is that established by Jackson v.
Virginia.[8]
The previously-applied factual sufficiency standard considers whether the
evidence supporting guilt, though legally sufficient, is so weak that the jury=s verdict seems clearly wrong and
manifestly unjust, or evidence contrary to the verdict is such that the jury=s verdict is against the great weight
and preponderance of the evidence.  Grotti
v. State, 273 S.W.3d 273, 283 (Tex.Crim.App.
2008); Watson v. State, 204 S.W.3d 404, 414-15 (Tex.Crim.App.
2006).  Under that standard, the
ultimate question is whether, considering all the evidence in a neutral light,
the jury was rationally justified in finding guilt beyond a reasonable
doubt.  Grotti, 273
S.W.3d at 283.  Even had we
applied such a standard to review of the evidence, we could not sustain
appellants contention.  From our review
of the entire record, the finding of appellants knowingly injurious conduct
was neither clearly wrong and manifestly unjust nor
against the great weight and preponderance of the evidence. 

We overrule appellants issues one
and two.

Issue Three - Jury Charge

In his third issue,
appellant contends the trial court erred when it denied his request to include
in the jury charge a voluntariness instruction pursuant to § 6.01(a) of the
Penal Code, which provides, Aa person commits an offense only if he
voluntarily engages in conduct, including an act, an omission, or possession.@  See Tex. Penal Code Ann. ' 6.01(a) (Vernon
2003).  

A[A]n accused is entitled
to an affirmative instruction on any defensive issue raised by the evidence,
whether that evidence is weak or strong, unimpeached
or contradicted, and regardless of what the trial court may . . . think about
the credibility of the defense.@  Valenzuela v. State, 943 S.W.2d 130, 131 (Tex.App.--Amarillo 1997, no pet.) (citing
Hamel v. State, 916 S.W.2d 491, 493 (Tex.Crim.App.
1996)). We review alleged charge error by answering two questions: (1) whether
error actually existed in the charge; and (2) whether sufficient harm resulted
from the error to result in reversal.  Ngo v. State, 175 S.W.3d 738, 744 (Tex.Crim.App.
2005); Hutch v. State, 922 S.W.2d 166, 170‑71 (Tex.Crim.App.1996).

We agree with the State
that the evidence does not raise an issue of the voluntariness of appellants
conduct, as the concept of voluntariness has been applied in caselaw.  The
evidence appellant sees as raising the issue is
contained in his statements to police, where he told, among other versions,
that his sons injury occurred when he tossed his son up into the air but
failed to catch him, allowing his head to hit the floor.  Appellant argues the jury could have seen his
failure to catch the child as an involuntary act, likening his failure to catch
him to the physical reflex referred to in caselaw.  See
Rogers v. State, 105 S.W.3d 630, 638 (Tex.Crim.App.
2003) (noting Avoluntariness@ refers to ones own
physical body movements; and AIf those physical movements are the nonvolitional result of someone elses act, are set in
motion by some independent non‑human force, are caused by a physical
reflex or convulsion, or are the product of unconsciousness, hypnosis or other nonvolitional impetus, that movement is not
voluntary).  We see nothing involuntary
in the action appellant described in his statement, that of tossing his son in
the air.  That he intended to catch him
but did not is simply another way of saying he did not intend the result of his
conduct.  Conduct [is not] rendered
involuntary merely because an accused does not intend the result of his
conduct.  Id., (quoting Adanandus v. State,
866 S.W.2d 210, 230 (Tex.Crim.App. 1993)).  Appellant was not entitled to an instruction
on voluntariness. His third issue is overruled.

Having overruled each of
appellant=s three issues, we affirm
the judgment of the trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 

Do not publish.

 

            








 











[1]
See Tex. Penal Code
Ann. ' 22.04 (Vernon
Supp. 2010).  This is a first degree
felony punishable by imprisonment for life or for any term of not more than 99
years or less than 5 years and a fine not to exceed $10,000.  See Tex. Penal Code Ann. '' 12.32 (Vernon
Supp. 2010); 22.04(e) (Vernon 2010).  

 





[2] The paramedic also noted that when the child opened his
eyes, Athey would veer straight to the
left, which is another sign of a head injury, a brain injury.@





[3] By the time of trial, appellant and
his wife had divorced.  She testified she
divorced appellant after deciding the injury to their son was not an
accident.

 





[4] Serious bodily injury means bodily injury that creates a
substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.  Tex. Penal Code Ann. §
1.07(a)(46) (Vernon Supp. 2010).

 





[5] The record indicates appellant at the time was twenty-two
years old, about six feet tall, and weighed about 200 pounds.





[6] Appellants former wife also
agreed that appellant, as a parent and as she saw him around the children, Awould
know that throwing a child across the room like a fast pitch softball would
injure that child.@

 





[7] Appellant=s son was born prematurely, and
spent four months in the hospital at birth. 
He underwent four surgeries. He was partially deaf and wore hearing
aids. Development of
the childs speech was delayed and he was learning to sign. The State argues
the jury could have inferred appellant caused his sons injury intentionally or
knowingly from testimony appellant was quick tempered, was immature, was
frustrated by his sons partial deafness and difficulty in communication,
favored the daughter over the son, left most child-rearing duties to his wife,
and was required to have the children home with him that day because the family
awoke late and his wife hurriedly took their only vehicle to work. Appellant
was not employed at the time and the water to their home was turned off because
they could not pay the bill.  We do not
find it necessary to evaluate the inferences the jury rationally could have
drawn from such evidence.

 





[8] 443
U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).